# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### January 5, 2012 Session

## WILLIAM S. LOCKETT, JR.
### v.
## BOARD OF PROFESSIONAL RESPONSIBILITY

**Direct Appeal from the Chancery Court of Knox County**
**No. 179245-3     Walter C. Kurtz, Senior Judge**

---

**No. E2011-01170-SC-R3-BP - Filed: July 3, 2012**

---

While working for a law firm in which he was a shareholder, an attorney performed legal services for clients and failed to remit fees owed to the law firm. Members of the law firm confronted the attorney about the misappropriated legal fees shortly after the attorney resigned his position at the law firm to assume elected public office. As a result of his conduct, the attorney pleaded guilty to theft and to willful failure to file income tax returns. During a subsequent investigation, the Board of Professional Responsibility discovered that the attorney had accepted loans from the law firm's clients while he was employed at the law firm. A hearing panel of the Board of Professional Responsibility found that the attorney should be suspended for four years. The attorney appealed, and the chancery court applied additional mitigating factors to reduce the suspension to two years. We hold that the chancery court erred in modifying the judgment without finding that any of the circumstances in Tennessee Supreme Court Rule 9, section 1.3 applied. We also hold that the hearing panel erred in imputing a conflict of interest to the attorney with respect to the loan from the law firm's client and in misapplying aggravating and mitigating factors. Despite these errors, we conclude that the length of suspension imposed by the hearing panel is consistent with the sanctions imposed on attorneys for similar conduct. We therefore reverse the chancery court's reduction of the suspension to two years and affirm the hearing panel's imposition of a four-year suspension.

**Tenn. App. Rule 3 Appeal as of Right;**
**Judgment of the Chancery Court of Knox County Reversed**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Sandy Garrett, Senior Litigation Counsel, for the appellant, Board of Professional Responsibility of the Supreme Court of Tennessee.

William S. Lockett, Jr., pro se.

## OPINION

### I. Facts and Procedural History

William S. Lockett, Jr., received a license to practice law in the State of Tennessee in 1983. After completing a judicial clerkship, Mr. Lockett practiced law in the private sector for approximately twenty-five years. He was a shareholder, officer, and director of the Knoxville law firm of Kennerly, Montgomery & Finley ("the Firm") during the last twenty-one years of his private practice. Mr. Lockett's employment agreement required that he work on a full-time basis for the Firm and devote substantially all of his working time and energies to the development of the Firm's business. Mr. Lockett's employment agreement also specified that all incoming rights and property generated through his professional services were the property of the Firm.

On August 31, 2008, Mr. Lockett resigned his position at the Firm to become the Knox County Law Director, an elected position. Approximately six months after he left, the Firm discovered that Mr. Lockett had performed and received payment for legal services without remitting the payments to the Firm in violation of his employment agreement.[1] Mr. Lockett failed to remit more than twenty-five separate payments to the Firm during a three-year period. Mr. Lockett self-reported his behavior to the Board of Professional Responsibility after members of the Firm confronted Mr. Lockett about his misappropriation of the Firm's funds.

While he was a member of the Firm, Mr. Lockett also requested and received loans from the Firm's current and former clients. Mr. Lockett did not obtain a written waiver from the clients before obtaining these loans. Some of the loans were repaid, and the balances on other loans were forgiven. The balance of one loan was forgiven in exchange for providing legal services. The value of those legal services was not remitted to the Firm.

---

[1] Mr. Lockett received payments from clients both in cash and in credits to his "Trade Bank" account. Trade Bank is an internet service that facilitates barter transactions. Mr. Lockett could use his Trade Bank credits to purchase goods and services from other Trade Bank members.

Mr. Lockett received a loan from Tim Graham for $10,000 ("the Graham Loan"). Mr. Graham was a client of the Firm when Mr. Lockett received the loan. Mr. Lockett, however, was unaware that Mr. Graham was a client of the firm when the loan was made.

As a consequence of his misappropriation of the Firm's funds, Mr. Lockett submitted a guilty plea to theft over $10,000, a class C Felony, on April 8, 2010. See Tenn. Code Ann. §§ 39-14-103, -105 (2010). Mr. Lockett also submitted a guilty plea in federal court on April 27, 2010, for willful failure to file income tax returns. See 26 U.S.C. § 7203 (2006).

The Board filed three separate petitions for discipline against Mr. Lockett and sought his disbarment. Those petitions were consolidated, and the Board convened a hearing panel to hear the case. Tenn. Sup. Ct. R. 9, § 8.2. The hearing panel found that Mr. Lockett's felony theft violated Tennessee Supreme Court Rule 8, Rule of Professional Conduct 8.4(a), (b), (c), and (d) and that Mr. Lockett's willful failure to file income tax returns violated Rule of Professional Conduct 8.4(b) and (d). The hearing panel also found that Mr. Lockett's request and receipt of the loan from Mr. Graham violated Rules of Professional Conduct 1.4, 1.8(a), and 8.4(a) and (d). The hearing panel made no findings with respect to any other loans, although Mr. Lockett admitted that he received loans from other individuals whom he had personally represented while working at the Firm.

In determining the appropriate discipline, the hearing panel considered as aggravating factors Mr. Lockett's substantial experience in the practice of law, his previous service as a Board of Professional Responsibility Hearing Panel member, the number of transgressions and period of time over which the transgressions occurred, and evidence that Mr. Lockett sought an elected position in public office while the misconduct was occurring. The hearing panel considered Mr. Lockett's lack of knowledge that Mr. Graham was a client of the Firm and Mr. Lockett's personal financial difficulties resulting from his son's serious illness as mitigating factors.

The hearing panel found that Mr. Lockett should be suspended for a period of four years and that Mr. Lockett should be supervised by a practice monitor for one year if he was reinstated. Mr. Lockett perfected an appeal to the Chancery Court for Knox County by petition for writ of certiorari.

Following oral argument, the chancery court applied additional mitigating factors not found by the hearing panel but made no findings pursuant to Tennessee Supreme Court Rule 9, section 1.3. The chancery court entered an order affirming the hearing panel's judgment and reducing Mr. Lockett's suspension from four years to two years. The Board has appealed.

## II. Analysis

On appeal, the Board contends that the chancery court improperly reduced the length of Mr. Lockett's suspension without finding any grounds for modification of the discipline as required by Tennessee Supreme Court Rule 9, section 1.3. In response, Mr. Lockett does not dispute that he violated the Rules of Professional Conduct but asserts that the length of his suspension should be less than the two-year suspension imposed by the chancery court.

*Chancery Court Decision*

Tennessee Supreme Court Rule 9, section 1.3 provides that a trial court

> may reverse or modify the [hearing panel's] decision if the rights of the petitioner have been prejudiced because the [hearing] panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3. A trial court's modification of a hearing panel's decision must be based on one of the enumerated circumstances in Tennessee Supreme Court Rule 9, section 1.3. Bd. of Prof'l Responsibility v. Love, 256 S.W.3d 644, 652 (Tenn. 2008). A trial court "shall not substitute its judgment for that of the [hearing] panel as to the weight of the evidence on questions of fact." Tenn. Sup. Ct. R. 9, § 1.3. See Bd. of Prof'l Responsibility v. Allison, 284 S.W.3d 316, 323 (Tenn. 2009).

The chancery court did not base its modification of the discipline imposed by the hearing panel on any of the five enumerated bases for modification set forth in Tennessee Supreme Court Rule 9, section 1.3. Instead, the chancery court reviewed the record and found additional mitigating factors that had not been considered by the hearing panel. Those factors included Mr. Lockett's personal or emotional problems, a timely, good-faith effort to make restitution, a full disclosure and cooperative attitude toward the proceedings, character references, imposition of other sanctions, remorse, and the absence of a prior disciplinary record. See ABA Standards for Imposing Lawyer Sanctions, 9.32 (a), (c), (d), (e), (g), (k), (*l*).

A chancery court is not precluded from considering additional mitigating factors to reverse or modify a hearing panel's decision if one of the enumerated circumstances in Tennessee Supreme Court Rule 9, section 1.3 applies. We therefore review the chancery

court's modification of the hearing panel's judgment to determine 1) the applicability of the additional factors found by the chancery court; and 2) whether the hearing panel's failure to consider one or more of the additional factors met one or more of the five enumerated bases for modification set forth in Supreme Court Rule 9, section 1.3, despite the chancery court's failure to make an explicit finding in this respect.

The chancery court considered as an additional mitigating factor Mr. Lockett's personal or emotional problems. ABA Standard 9.32(c). Arguably, the hearing panel considered Mr. Lockett's personal or emotional problems when it considered as a mitigating factor Mr. Lockett's personal financial difficulties resulting from his son's serious illness. The chancery court's finding is therefore a duplication of a similar finding of the hearing panel.

The chancery court considered additional mitigating factors including a timely, good-faith effort to make restitution, a full disclosure and cooperative attitude toward the proceedings, character references, and remorse. ABA Standard, 9.32(d), (e), (g), (*l*). These factors, however, depend on an assessment of Mr. Lockett's credibility and the credibility of those individuals who provided character references. Credibility and the weight to be given to the evidence are questions of fact. State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011). The standard of review in Tennessee Supreme Court Rule 9, section 1.3 requires that a court give deference to findings of fact made by a hearing panel. Hughes v. Bd. of Prof'l Responsibility, 259 S.W.3d 631, 651-52 (Tenn. 2008) (Holder, J., concurring and dissenting); see also Love, 256 S.W.3d at 653. In considering these factors, the chancery court erred in weighing the evidence and substituting its judgment for that of the hearing panel as to the weight of evidence on issues of fact. Tenn. Sup. Ct. R. 9, § 1.3.

The chancery court also considered the imposition of other sanctions and the absence of a prior disciplinary record in addition to the mitigating factors reflected in the hearing panel's decision. ABA Standard 9.32(a), (k). Although Mr. Lockett has suffered penalties and sanctions for his criminal convictions, the chancery court erred in finding this additional mitigating factor to be applicable. The consideration of other penalties or sanctions imposed on a respondent attorney is appropriate when those penalties or sanctions arise out of the disciplinary proceedings themselves or have been imposed by another jurisdiction's disciplinary board for the same conduct. See, e.g., In re Ortman, 709 S.E.2d 784, 786 (Ga. 2011) (Nahmias, J., concurring) (restricting consideration of other sanctions to those arising during the disciplinary process itself and not to penalties imposed in a collateral criminal proceeding); In re Lopez, 252 P.3d 312, 317 (Or. 2011) (considering discipline in another jurisdiction for the same conduct). But see In re Neisner, 2010 VT 102, ¶ 20, 189 Vt. 145, 155, 16 A.3d 587, 593 (considering criminal sanctions imposed on respondent attorney). The criminal penalties and sanctions imposed on Mr. Lockett did not arise from disciplinary

proceedings in this or any other jurisdiction but instead arose from criminal convictions that were the subject of the disciplinary complaint. The chancery court's inclusion of this mitigating factor was therefore ill-founded.

The absence of a prior disciplinary record was not listed by the hearing panel as a mitigating factor. Arguably, the hearing panel should have listed this factor in mitigation of the discipline imposed. A chancery court, however, may not modify the discipline imposed on a respondent attorney unless the chancery court concurrently finds that the rights of the petitioner were prejudiced because the hearing panel's "findings, inferences, conclusions or decisions" met one of the enumerated circumstances in Tennessee Supreme Court Rule 9, section 1.3. See Allison, 284 S.W.3d at 323 (holding that a chancery court erred in modifying a respondent attorney's punishment without finding any of the five circumstances in Tennessee Supreme Court Rule 9, section 1.3). The chancery court made no such finding, and the record does not support a finding that Mr. Lockett's rights were prejudiced by the failure to include his absence of a disciplinary record as a mitigating factor.

*Hearing Panel Decision*

Although we have held that the chancery court erred in modifying the discipline of Mr. Lockett without finding any of the enumerated circumstances in Tennessee Supreme Court Rule 9, section 1.3, we conduct our own review of the hearing panel's decision.[2] Our standard of review is identical to the standard of review under which the chancery court reviews the findings of the hearing panel. Threadgill v. Bd. of Prof'l Responsibility, 299 S.W.3d 792, 807 (Tenn. 2009). We review the transcript of the record from the circuit or chancery court, which includes the transcript of evidence before the hearing panel. Tenn. Sup. Ct. R. 9, § 1.3; Rayburn v. Bd. of Prof'l Responsibility, 300 S.W.3d 654, 660 (Tenn. 2009). We modify the decision of a hearing panel only if one of the five enumerated circumstances in Rule 9, section 1.3 applies. Rayburn, 300 S.W.3d at 660.

Mr. Lockett argues that the hearing panel's decisions were arbitrary and capricious, characterized by an abuse of discretion, or unsupported by substantial and material evidence. See Tenn. Sup. Ct. R. 9, § 1.3; see also Hughes, 259 S.W.3d at 641. We review each basis for the hearing panel's decision to determine if the panel erred.

---

[2] If allegations are made of irregularities in the procedure before the panel, the chancery court "is authorized to take such additional proof as may be necessary to resolve such allegations." Tenn. Sup. Ct. R. 9, § 1.3. No additional proof was considered by the chancery court in this case, and we are not required to determine the standard of review of the chancery court's findings.

## Graham Loan

It is undisputed in this case that Mr. Lockett borrowed $10,000 from Mr. Graham in June 2008. It is also undisputed that Mr. Graham was a client of the Firm at that time, that Mr. Lockett did not know that Mr. Graham was a client of the Firm, and that Mr. Lockett had never personally represented Mr. Graham. Mr. Lockett asserts that the hearing panel erred in subjecting him to discipline for soliciting and accepting a loan from Mr. Graham. We agree.

The interpretation of a rule is a question of law, which we review de novo. Thomas v. Oldfield, 279 S.W.3d 259, 261 (Tenn. 2009). When interpreting the Rules of the Tennessee Supreme Court, we apply the traditional rules of statutory construction. Doe v. Bd. of Prof'l Responsibility, 104 S.W.3d 465, 469 (Tenn. 2003).

At the time Mr. Lockett received the loan from Mr. Graham, Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.8(a) prohibited attorneys from engaging in certain business transactions with clients.[3] At the time the loan was made, Rule of Professional Conduct 1.8 did not include language imputing this prohibition to other members of a law firm. Rule of Professional Conduct 1.8 was amended after Mr. Lockett accepted the loan from Mr. Graham. The amendment includes a new subsection 1.8(k) providing for imputation of the prohibition in Rule of Professional Conduct 1.8(a) to other members of a firm.[4]

The amendment of a rule raises a presumption of an intent to change the rule. Cf. State v. Gomez, ___ S.W.3d ___, ___, No. M2008–02737–SC–R11–CD, 2012 WL 1405782, at *5 (Tenn. Apr. 24, 2012) (citing Lavin v. Jordon, 16 S.W.3d 362, 369 (Tenn. 2000)). The

---

[3] At the time of the transaction, Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.8(a) stated:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client; and
> (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
> (3) the client consents thereto in a writing signed by the client.

[4] Effective January 1, 2011, Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.8(k) provides, "[w]hile lawyers are associated in a firm, a prohibition in the foregoing paragraphs (a) through (i) that applies to any one of them shall apply to all of them."

-7-

2011 amendment to Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.8 extended the prohibition of engaging in certain business transactions with clients of an attorney to other attorneys in the same firm. Applying the presumption of an intent to change the rule by amendment, we conclude that the pre-amendment version of Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.8 did not prohibit an attorney from conducting a business transaction prohibited by Rule of Professional Conduct 1.8(a) with the client of another member of his law firm.

A hearing panel abuses its discretion "when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" Henderson v. SAIA, Inc., 318 S.W.3d 328, 335 (Tenn. 2010) (quoting Lee Medical, Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010)). Mr. Graham was not Mr. Lockett's client, and the rule in place at the time of the loan did not prohibit Mr. Lockett from accepting a loan from Mr. Graham. We therefore conclude that the hearing panel abused its discretion when it determined that Mr. Lockett was subject to discipline for soliciting and accepting the loan from Mr. Graham.

### Theft and Willful Failure to File Income Tax Returns

Although we have determined that Mr. Lockett is not subject to discipline for soliciting and accepting a loan from Mr. Graham, the hearing panel also concluded that Mr. Lockett is subject to discipline for the criminal offenses of theft and willful failure to file income tax returns. Mr. Lockett does not dispute that he should be disciplined for his criminal conduct.[5] Instead he urges that the length of the suspension imposed by the hearing panel was excessive. The focus of our review therefore is the hearing panel's decision to impose a suspension of Mr. Lockett's law license for a period of four years.

---

[5] Mr. Lockett has not appealed the hearing panel's conclusion that he violated Tennessee Supreme Court Rule 8, Rule of Professional Conduct 8.4(a), (b), (c), and (d). Rule of Professional Conduct 8.4 provides:

> It is professional misconduct for a lawyer to:
> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice . . . .

ABA Standards

This Court uses the ABA Standards as a guidepost for determining the appropriate level of discipline for attorney misconduct. Tenn. Sup. Ct. R. 9, § 8.4; see also Threadgill, 299 S.W.3d at 809. We consider "the duty violated; . . . the lawyer's mental state; . . . the potential or actual injury caused by the lawyer's misconduct; and . . . the existence of aggravating or mitigating factors." ABA Standard 3.0; see also Sneed v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 617 (Tenn. 2010). The ABA Standards suggest the appropriate baseline sanction, and aggravating and mitigating factors provide a basis for increasing or reducing the sanction imposed. See Threadgill, 299 S.W.3d at 810; Bd. of Prof'l Responsibility v. Maddux, 148 S.W.3d 37, 40-42 (Tenn. 2004).

The portions of the ABA Standards relevant to this case state that

> [d]isbarment is generally appropriate when:
> (a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
> (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA Standard 5.11.

> Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in [ABA] Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

ABA Standard 5.12.

In addition to its finding that Mr. Lockett was subject to discipline for the Graham Loan, the hearing panel based Mr. Lockett's suspension on its determination that Mr. Lockett pleaded guilty to theft, a criminal offense. Mr. Lockett's theft from his law firm meets the

requirements of ABA Standard 5.11, which sets forth the circumstances under which disbarment is the appropriate baseline sanction.

Mr. Lockett also pleaded guilty to the willful failure to file federal income tax returns. The hearing panel found that Mr. Lockett failed to file income tax returns because he needed the funds to "offset personal financial problems [he] encountered when his son became ill . . . and [Mr. Lockett] purchased a new family home." Sanctions imposed on attorneys in other states who willfully fail to file tax returns range from public reprimand to suspension. See Byrd v. Mississippi Bar, 2001-BA-00731-SCT (¶¶ 15-16), 826 So. 2d 1249, 1254-55 (Miss. 2002) (collecting cases). See generally Annotation, Federal Income Tax Conviction as Constituting Nonprofessional Misconduct Warranting Disciplinary Action Against Attorney, 63 A.L.R.3d 512 (1975). Mr. Lockett's willful failure to file income tax returns meets the requirements of ABA Standard 5.12, which sets forth the circumstances under which suspension is the appropriate baseline sanction.

A hearing panel does not abuse its discretion when it makes a choice among several acceptable alternatives. Henderson, 318 S.W.3d at 335. Although the hearing panel could have concluded that Mr. Lockett should be disbarred, the hearing panel's decision that suspension was the appropriate baseline sanction for Mr. Lockett's conduct was within the discretion of the hearing panel. We arrive at this conclusion despite our determination that Mr. Lockett is not subject to discipline for the Graham Loan.

Aggravating and Mitigating Factors

In determining the applicable period of suspension, a hearing panel may also consider any aggravating or mitigating factors that would justify an increase or reduction in the discipline imposed.[6] See Threadgill, 299 S.W.3d at 810; Maddux, 148 S.W.3d at 40-42.

---

[6] The ABA Standards recognize the following aggravating factors:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;

(continued...)

Although we declined to apply factors not listed in the ABA Standards in previous cases, see Threadgill, 299 S.W.3d at 810, we recognize that the purpose of the ABA Standards is to "promote . . . consideration of all factors relevant to imposing the appropriate level of sanction in an individual case." ABA Standard 1.3 (emphasis added); see also ABA Standard 9.21 ("[A]ggravating circumstances are any considerations or factors that may

---

[6] (...continued)
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.

ABA Standard 9.22.

The ABA Standards recognize the following mitigating factors:

(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.

ABA Standard 9.32.

The ABA Standards provide that the following factors are neither aggravating or mitigating:

(a) forced or compelled restitution;
(b) agreeing to the client's demand for certain improper behavior or result;
(c) withdrawal of complaint against the lawyer;
(d) resignation prior to completion of disciplinary proceedings;
(e) complainant's recommendation as to sanction;
(f) failure of injured client to complain.

ABA Standard 9.4.

-11-

justify an increase in the degree of discipline to be imposed." (emphasis added)); ABA Standard 9.22 ("[M]itigating circumstances are <u>any considerations or factors</u> that may justify a reduction in the degree of discipline to be imposed." (emphasis added)). To this end, we consider the aggravating and mitigating factors listed in the ABA Standards as illustrative rather than exclusive. To the extent that our decision in <u>Threadgill</u> concluded otherwise, it is overruled.

The hearing panel found as aggravating factors Mr. Lockett's substantial experience in the practice of law, his previous service as a hearing panel member, the number of transgressions and period of time over which the transgressions occurred, and Mr. Lockett's seeking, acceptance, and retention of an elected public office while the misconduct was occurring.

A lawyer in an official or governmental position who engages in conduct prejudicial to the administration of justice breaches a duty to maintain the public trust. <u>See</u> ABA Standard 5.21 (knowing misuse of office); ABA Standard 5.22 (knowing failure to follow proper procedures or rules); ABA Standard 5.23 (negligent failure to follow proper procedures or rules); ABA Standard 5.24 (isolated instance of negligent failure to follow proper procedures or rules). Mr. Lockett's misconduct, however, was unrelated to his service in public office and occurred before he assumed office. Misconduct while pursuing public office is not a breach of the public trust. The hearing panel therefore abused its discretion in considering as an aggravating factor Mr. Lockett's pursuit of elected public office while the misconduct was occurring.

The hearing panel considered Mr. Lockett's previous service on hearing panels as an aggravating factor. We view this finding to be more properly considered as reflecting Mr. Lockett's substantial experience in the practice of law, an aggravating factor found by the hearing panel. <u>See</u> ABA Standard 9.22(i) (recognizing substantial experience in the practice of law as an aggravating factor). We believe that it is inappropriate to consider such service as an independent aggravating factor. <u>Cf.</u> <u>Threadgill</u>, 299 S.W.3d at 810 (declining to consider involvement in professional associations as a relevant mitigating factor).

The hearing panel also considered the number of transgressions and period of time over which the transgressions occurred as an aggravating factor. This finding of the hearing panel is consistent with ABA Standards 9.22(b), (c), and (d) in that Mr. Lockett's conduct represented a pattern of multiple instances of misconduct resulting from Mr. Lockett's dishonest or selfish motive.

As mitigating factors, the hearing panel considered the personal financial difficulties resulting from the illness of Mr. Lockett's son and Mr. Lockett's lack of knowledge that Mr.

Graham was a client of the firm when the loan from Mr. Graham was made. The ABA Standards recognize "personal or emotional problems" as an appropriate mitigating factor. See ABA Standard 9.32(c). The hearing panel therefore correctly considered Mr. Lockett's personal difficulties arising from his son's illness as a mitigating factor.

Finally, the hearing panel found that Mr. Lockett violated Tennessee Supreme Court Rule 8, Rules of Professional Conduct 1.4, 1.8(a), and 8.4(a) and (d) by accepting a loan from Mr. Graham but that his lack of knowledge that Mr. Graham was a client of the Firm was a mitigating factor. We have concluded that Mr. Lockett is not subject to discipline for this loan, and this factor is therefore inapplicable. The hearing panel therefore erred in considering as a mitigating factor Mr. Lockett's lack of knowledge that Mr. Graham was a client of the Firm.

## Uniformity of Punishment

In reviewing the punishment appropriate for an offense, it is also appropriate to consider sanctions imposed in cases with similar facts. Maddux, 148 S.W.3d at 40. The hearing panel imposed a suspension of four years. This Court has previously considered numerous cases in which attorneys have converted funds for their own use. See Threadgill, 299 S.W.3d at 811 (collecting cases). The sanctions imposed are typically lengthy suspensions or disbarment. See Threadgill, 299 S.W.3d at 810-12.

Mr. Lockett cites Maddux, in which we suspended an attorney for thirty days for misappropriating funds from his law firm, as a comparable case. Maddux, 148 S.W.3d at 39-42. Maddux is distinguishable from Mr. Lockett's case. In Maddux, the trial court found that the attorney misappropriated funds from a law firm but did not have a criminal intent to keep the converted funds permanently. Maddux, 148 S.W.3d at 39. In contrast, Mr. Lockett pleaded guilty to having a criminal intent to permanently deprive his law firm of the misappropriated funds.

Mr. Lockett's criminal conduct represents a serious violation of the ethical standards to which we hold attorneys in this state. Despite the hearing panel's misapplication of aggravating and mitigating factors, the four-year suspension imposed by the hearing panel is consistent with the sanctions imposed on attorneys for similar criminal conduct. We cannot say that Mr. Lockett's four-year suspension is an abuse of discretion.[7]

---

[7] Although Mr. Lockett has not appealed its conclusion, we also agree with the hearing panel that Mr. Lockett should be supervised by a practice monitor for one year if he is reinstated.

### III. Conclusion

We reverse the chancery court. We affirm the hearing panel's decision to suspend Mr. Lockett for four years. Costs of this appeal are taxed to William S. Lockett, Jr., for which execution may issue, if necessary.

_____
JANICE M. HOLDER, JUSTICE